# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHARLES SCHOBER,

        Plaintiff,

v.                                    Case No. 07-CV-11922

MARITZ INC.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING "DEFENDANT MARITZ, INC.'S MOTION FOR SUMMARY JUDGMENT"

Pending before the court is Defendant Martz, Inc.'s "Motion for Summary Judgment." This motion has been fully briefed and the court concludes that a hearing on the motion is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

## I. BACKGROUND

This dispute stems from an injury that occurred during Daimler Chrysler Corporation's ("Chrysler's") "Ride & Drive" program ("program"). The facts, for the purposes of this motion, are not contested. Chrysler entered into a contract with Defendant to schedule the program and provide logistical support. Defendant, in turn, contracted with the Show Support Group to provide a driver and trailer to transport the automobiles. The program was designed to promote Dodge Charger automobiles to police departments around the country. The program ultimately visited eight cities and the vehicles were transported between the various sites using trailers.

Plaintiff Charles Schober, a Chrysler employee, was responsible for keeping the vehicles in working order throughout the program. Specifically, Plaintiff was responsible

for installing replacement parts, monitoring fluid and oil levels and performing repair work and general maintenance.

On January 8, 2006 the program began in Los Angeles, California. The vehicles were being stored on a 53-foot standard dry freight trailer. Prior to the demonstration, Plaintiff determined that the cars needed oil and washer fluid. He obtained the oil, climbed onto the trailer using the rear ride guard, added the oil and then descended using the ride guard. Subsequently, Plaintiff climbed onto the trailer to add windshield wiper fluid. When he attempted to get down, however, he fell, facing forward, to the ground. Plaintiff suffered a fractured left wrist.

Plaintiff initiated the above-captioned matter in this court on May 31, 2007. In his complaint, Plaintiff alleges that Defendant negligently failed to provide a safe means of ingress into and egress from the trailer and seeks non-economic damages in excess of $75,000. On January 11, 2008, Defendant filed the instant motion for summary judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a

defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III. DISCUSSION

In its motion for summary judgment, Defendant raises four principal arguments: (1) Defendant owed no duty to Plaintiff independent of Defendant's contractual obligations to Chrysler; (2) Defendant owed no duty concerning the style or condition of the trailer utilized or to otherwise provide alternative means of ingress and egress; (3) Plaintiff has not sustained threshold injuries such that they have impaired his ability to lead a normal life; and (4) Plaintiff's claims fail as a matter of law for lack of expert testimony.[1] Upon review, the court finds that Defendant's threshold injury argument is dispositive.

Under Michigan's No-Fault Insurance Act, Plaintiff is precluded from recovering non-economic damages for tort claims caused by the ownership, maintenance or use of a motor vehicle unless Plaintiff has suffered death, serious impairment of a bodily function or permanent and serious disfigurement. Mich. Comp. Laws § 500.3135(1). Plaintiff does not claim that he has suffered death or permanent and serious disfigurement. Thus, whether Plaintiff has suffered a serious impairment of a bodily function is a threshold issue the court must address before determining the merits of Plaintiff's negligence claim.[2]

---

[1]On February 26, 2008, the court granted Defendant's motion to strike Plaintiff's expert report. (*See* 2/26/08 Order.)

[2]Plaintiff recognizes that suffering from a threshold injury is required under Michigan law, although Plaintiff cautions the court that "any court that grants a Motion for Summary Judgment involving the threshold issue[] must go into an absolute detailed analysis [sic] as to why such motion is being granted." (Pl.'s Resp. at 18.)

4

Under Michigan law, a serious impairment of bodily function is "an objectively manifested impairment of an important bodily function that affects the person's general ability to lead his or her normal life." Mich. Comp. Laws § 500.3135(7). Courts may decide this issue as a matter if law "if 'there is no factual dispute concerning the nature and extent of the person's injuries,' or if there is a factual dispute, but it is not material to the determination whether the person has suffered a serious impairment of bodily function." *Kreiner v. Fischer*, 683 N.W.2d 611, 619 (Mich. 2004) (quoting Mich. Comp. Laws § 500.3135(2)(a)(I)). Here, Defendant acknowledges that Plaintiff suffered from a "fractured nondominant left wrist, requiring an open reduction with internal fixation, physical therapy within two weeks of surgery which went from approximately February to the beginning of May, and a subsequent return to work at the end of May with a limited restriction which was removed within a month." (Def.'s Mot. at 13.) Plaintiff does not point to any contested facts relating to Plaintiff's injuries and merely claims that these facts show that his "injuries, at least for the six months closed period, [sic] meet the Michigan No Fault threshold." (Pl.'s Resp. at 18.) Therefore, the parties agree that an important body function has been impaired, and that the impairment is objectively manifested, leaving the court to determine if the impairment affects Plaintiff's general ability to lead his normal life.

In determining whether a plaintiff's normal life has been affected, courts "should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life." *Kreiner*, 683 N.W.2d at 626. Nonexhaustive factors to consider include "(a) the nature and extent of the impairment, (b) the type and length of treatment

required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery." *Id.*

According to Plaintiff's surgeon, Mark Koniuch, Plaintiff "sustained a displaced fracture involving his left distal radius." (Medical Records at 2, Pl.'s Ex. H.) Plaintiff's "complex fracture pattern" involved "a transverse fracture at the metaphysis accompanied by dorsal displacement. This fracture then continued proximally along the dorsal and radial border of the distal radius as a long oblique fracture, creating a long and thin dorsal radial bone spike." (*Id.* at 3.) Plaintiff's injury required surgery, and Dr. Koniuch performed "open reduction and internal fixation." (*Id.*) Plaintiff "tolerated the operation and anesthesia well and was transferred to the recovery room in satisfactory condition." (*Id.* at 4.)

Nine days after surgery, Plaintiff was "experiencing pain and swelling of the left wrist," and "moderate swelling of the fingers," although Plaintiff was "able to flex and extend them well" and his "[n]eurocirculatory status [was] normal." (*Id.* at 10.) Although "[a]lignment and fixation [were] well-maintained at the fracture site," Dr. Koniuch recommended that Plaintiff "remain out of work at this time" and opined that "[i]t likely will be at least three months before he is able to return to full unrestricted duty." (*Id.*) Sixteen days after surgery, Dr. Koniuch indicated that Plaintiff's "wound is healing well and swelling is gradually decreasing," although "he still has considerable swelling and stiffness of the fingers." (*Id.* at 15.) Plaintiff "remains disabled for the next one week." (*Id.*) Twenty-three days after surgery, Plaintiff's "motion [was] slowly improving" and "[t]he fracture site [was] healing with good position and alignment." (*Id.* at 16.) Plaintiff

was then "unable to work," but Dr. Koniuch cleared him "for one-handed duty work . . . beginning on 02/13/06." (*Id.*)

Plaintiff continued to improve and attended therapy regularly. (*Id.* at 17.) Eleven weeks after surgery, Dr. Koniuch allowed him to work with his left hand as long as he lifted no more than five pounds. (*Id.*) Over three months post-surgery, Plaintiff had improved range of motion, full flexion of the fingers and the fracture site had healed, although Plaintiff had mild stiffness in one finger joint and mild arthritis. (*Id.*) Dr. Koniuch allowed Plaintiff to return to work on May 1, 2006 "with a restriction of no lifting [sic] greater than 20 pounds with the left hand." (*Id.*) After four and a half months, Dr. Koniuch noted that Plaintiff should be done with physical therapy in one week, "there has been considerable improvement and he will now begin work without restriction, effective today 6/02/06." (*Id.* at 18.) There are no medical records supporting any long-term residual limitations.

Plaintiff submitted these medical records, which establish Plaintiff's uncontested injury, treatment and physical progress, as well as Plaintiff's inability to work for five months following the accident.[3] Plaintiff has provided no other evidence showing any additional impact his injury had to his ability to lead his normal life. Although his counsel argues that "Plaintiff's lifestyle for those six months after this accident were basically sitting at home doing nothing" and because Plaintiff was "[u]nable to take care of his house, he had neighbors and others helping", (Pl.'s Resp. at 18.), attorney argument

---

[3]Although Dr. Koniuch permitted Plaintiff to return to work with a one-handed restriction one month after his injury, Defendant acknowledges that Plaintiff was unable to return to work because Chrysler had no one-handed work for him to perform. (Def.'s Reply at 4.)

alone is not evidence sufficient to withstand a motion for summary judgment. *See Plant*, 212 F.3d at 934 (explaining that the non-moving party must set forth enough *evidence* to show that there exists a genuine issue to be decided at trial). Moreover, any reasonable person would reject out of hand the assertion that Plaintiff was limited to merely "sitting at home doing nothing" for six months when his injury affected only his non-dominant hand, particularly after Dr. Koniuch released him for one-handed work one month following the accident and allowed Plaintiff to use his left hand, with weight restrictions, after four months. *See Kreiner*, 683 N.W.2d at 626 n.17 (stating that self-imposed, rather than physician-imposed, restrictions are insufficient).

The evidence before the court establishes that Plaintiff suffered from a serious fracture in his non-dominant wrist, which required surgery and physical therapy. The evidence shows that Plaintiff was prohibited from working for one month, but was thereafter released to work using his right hand only. Four months after his accident, Plaintiff was released to work with minimal weight restrictions, and Plaintiff did in fact return to work five months after his accident. Six months post-injury, Plaintiff's physician lifted all restrictions. Courts have found this type of limitation insufficient to establish a threshold injury.

In *Straub v. Collette*, the companion case to *Kreiner*, the Michigan Supreme Court determined that a two month period where Straub was not permitted to work, followed by a significant period in which Straub was unable to continue with his second job and hobby, did not constitute a serious impairment of a body function. *Kreiner*, 683 N.W.2d at 627. The Michigan Supreme Court also found that Kreiner did not establish a threshold injury, even though he had permanent limitations that restricted the duration

and scope of his construction work, because "[a] negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still generally able to lead his normal life." *Id.* at 628.

Plaintiff compares his injury to that of the plaintiff in *Jones v. Olson*, No. 268929, 2006 WL 2708685 (Mich. Ct. App. Sept. 21, 2006). In *Jones*, the Michigan Court of Appeals determined that after Jones's spine injury, his normal life was sufficiently disrupted when he was only able to return to work full time more than six months after his accident and, during those six months, he "was not able to hunt, snowmobile, play softball, do yard work, or walk with his girlfriend, which he had typically done four or five evenings each week." *Id.* at *1. "Further, he did not drive for three months, did not have intimate relations with his girlfriend for two months, and had difficulty dressing and feeding himself for two months." *Id.* Additionally, "during the months after the accident, plaintiff needed help from his mother, grandmother, and girlfriend to get his son to school in the morning." *Id.*

Unlike Jones, however, Plaintiff has not provided evidence of *any* non-work-related limitations. Moreover, Plaintiff is admittedly less active than Jones and did not have hobbies, do home repair work, participate in sports or do many household chores prior to the accident. (Def.'s Reply at 4.) A few weeks after his accident, Plaintiff was able to drive himself to physical therapy. (*Id.*) Therefore, unlike in *Jones*, there is no evidence that Plaintiff's life outside of work was "dramatically different." *Jones*, 2006 WL 2708685 at *2. "Minor interruptions" are insufficient, and "[a]lthough some aspects of a plaintiff's entire normal life may be interrupted by the impairment, if, despite those impingements, the course or trajectory of the plaintiff's normal life has not been

affected, then the plaintiff's 'general ability' to lead his normal life has not been affected

and he does not meet the 'serious impairment of body function' threshold." *Kreiner*, 683

N.W.2d at 625.

Given that Plaintiff's injuries affected his ability to work only temporarily (and for a

relatively short time), that Plaintiff was able to work without restriction six months after

his accident, that Plaintiff has no residual limitations and that there is no evidence of any

non-trivial lifestyle interruptions resulting from his injury, the court must conclude as a

matter of law that Plaintiff has not suffered from a serious impairment of a bodily

function. Therefore, Plaintiff is precluded from recovering non-economic damages from

Defendant. The court need not address the additional arguments asserting the absence

of duty and expert analysis or in other ways attacking the merits of Plaintiff's negligence

claim.

## IV. CONCLUSION

IT IS ORDERED that "Defendant Martz, Inc.'s Motion for Summary Judgment"

[Dkt. # 20] is GRANTED.


S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 29, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 29, 2008, by electronic and/or ordinary mail.


S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522